UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALMA C. FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 2877 |
| | ) | |
| v. | ) | Judge Sara L. Ellis |
| | ) | |
| FELICIA F. NORWOOD, Individually and as | ) | |
| Director of the Illinois Department of Healthcare | ) | |
| And Family Services, CLINT CALDWELL, | ) | |
| Individually and as Labor Relations Specialist | ) | |
| at Illinois Department of Healthcare | ) | |
| and Family Services, STATE OF ILLINOIS | ) | |
| DEPARTMENT OF HEALTHCARE AND | ) | |
| FAMILY SERVICES, STATE OF ILLINOIS | ) | |
| DEPARTMENT OF CENTRAL | ) | |
| MANAGEMENT SERVICES, and | ) | |
| DOES 1 through 10, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Having received a 30-day unpaid suspension, Plaintiff Alma Flores, a current employee of the Illinois Department of Healthcare and Family Services ("HFS"), brings this suit against Felicia Norwood, individually and as the Director of HFS, Clint Caldwell, individually and as the Labor Relations Specialist at HFS, HFS, the Illinois Department of Central Management Services ("CMS"), and ten unnamed "Doe" defendants (collectively "Defendants"). Flores alleges that Defendants suspended her in violation of her First and Fourteenth Amendment rights and seeks monetary damages and injunctive relief against Defendants under 42 U.S.C. §§ 1983 and 1985(3). Defendants move to dismiss [20] all claims, arguing that Flores does not allege the personal involvement of Caldwell and Norwood (collectively, the "Individual Defendants") sufficient to support a claim for monetary damages against them under § 1983, that the Eleventh

Amendment bars her claims for injunctive relief against the Individual Defendants in their official capacities because she is not seeking prospective relief to remedy an ongoing harm, and that as state agencies, HFS and CMS are not suable under § 1983. Because Flores has not adequately alleged the involvement of the Individual Defendants, she has not pleaded an ongoing harm that can be remedied by prospective injunctive relief, and the state agencies are not "persons" suable under § 1983, the Court grants the motion to dismiss.

## BACKGROUND[1]

Flores is an employee of HFS, where she works as a Child Support Specialist II Spanish Speaking within the Department of Child Support Enforcement. Flores has worked for the State of Illinois for over 21 years. Flores was an active member of her union until sometime in late 2015. As an active member, she attended meetings, organized union rallies, motivated union members, educated members about the Union Agreement, and engaged in numerous other union activities.

In 2011, the Office of the Executive Inspector General ("OEIG") initiated an investigation into a scheme to fraudulently obtain cash and food stamp assistance ("SNAP benefits") from HFS. Between 2011 and early 2015, OEIG interviewed numerous individuals, including Flores on three separate occasions, regarding this scheme. OEIG closed its investigation and issued its final report ("Final Report") on January 30, 2015. The Final Report did not include any findings that Flores participated in the SNAP benefits scheme, but it stated that Flores admitted to accessing confidential department files. Flores did not receive notification that OEIG issued the Final Report.

---

[1] The facts in the background section are taken from Flores' Amended Complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

On July 20, 2015, HFS held a pre-disciplinary meeting with Flores regarding the findings in the Final Report. Tracy Manuel, Regional Manager for HFS, conducted the meeting and Sylvia Salas, a Union Steward, was also present. Following the meeting, Flores and Salas filed a written response to the pre-disciplinary meeting in a timely fashion. On July 28, 2015, Caldwell contacted Salas and informed her of an offer for a five-day suspension for Flores. Caldwell again contacted Salas on July 29, 2015, repeating the offer. Salas again requested a copy of the Final Report.

On August 25, 2015, Flores learned that she needed to attend a "reconvened pre-disciplinary meeting" with Manuel on August 27, 2015. At this meeting, Flores and Salas learned that they needed to submit a response to the reconvened meeting by September 3, 2015 and that the forty-five day clock for discipline under Flores' Union Agreement would begin to run. The forty-five day clock is a requirement of the Union Agreement, which requires that any discipline must commence within forty-five days of the completion of the pre-disciplinary hearing. The Union Agreement does not provide for a reconvened pre-disciplinary meeting, and in her written response Flores objected to the validity of the reconvened pre-disciplinary meeting.

On September 8, 2015, Warren Cottrell delivered a 30-day[2] unpaid suspension pursuant to a "Personnel/Position Action Form and Statement of Discipline," signed by Norwood or her agent. Between the time of the initial pre-disciplinary meeting, after which she was offered a 5-day suspension, and September 8, Flores did not have any additional work performance related issues. Flores alleges that the motivating factor for increasing the suspension from the 5-day offer to the 30-day suspension ultimately imposed was that Defendants discovered Flores' union

---

[2] The amended complaint uses 29 days and 30 days at different points. The exact number of days is not material for purposes of the motion, therefore the Court uses 30 days for consistency.

activities. Flores alleges that her suspension was more severe than other employees who engaged in more flagrant rules violations because of her union activities. Flores' suspension began on September 9, 2015. She served her entire suspension. Flores' suspension was subsequently reduced to 18 days and she was repaid her lost wages for the reduced portion of the suspension.

On September 8, 2015, Defendants published the Amended Final Report on the internet. The Amended Final Report included Flores' name and embarrassed her. Flores alleges that Defendants published the report to harm her reputation.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I. **Individual Capacity Claims**

Flores seeks monetary damages against the Individual Defendants, in their individual capacities, for their roles in her suspension, which she alleges was imposed in violation of her First and Fourteenth Amendment rights. Defendants move to dismiss all individual capacity claims against the Individual Defendants, arguing that Flores has not adequately alleged their personal involvement in her suspension.

Flores alleges that she was given a 30-day suspension in a manner that violated her union contract and her constitutional rights. Specifically she alleges that her suspension was longer than it otherwise might have been because she is an active member of her union and that this violates her First Amendment Rights. She also argues that her suspension was issued in violation of her right to procedural due process. It is unclear which part of the process she alleges was constitutionally defective, and Flores does not argue what additional process she was due, but the Court assumes for purposes of this motion that Flores is arguing that her reconvened pre-disciplinary hearing is the source of this violation. Flores also alleges that Defendants violated her substantive due process rights by suspending her and doing so in a manner that shocks the conscience. Finally, Flores argues that Defendants violated her right to equal protection because the decision to hold the reconvened pre-disciplinary meeting and to subsequently suspend her for 30 days was an irrational or malicious application of the law directed at her because of her status as an active union member.

In order for an individual to be liable under § 1983, he or she must have been personally involved in the alleged constitutional violation. *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). A defendant may be personally liable "if the conduct

5

causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (alteration in original) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Therefore, for Caldwell or Norwood to be liable in their personal capacities, Flores must plead sufficient facts to plausibly show that the Individual Defendants engaged in the offending conduct or at a minimum knew about it and consented to it. *Hildebrandt*, 347 F.3d at 1039. With respect to Caldwell, Flores alleges that he contacted Salas, Flores' Union Steward, via email on two occasions—July 28 and 29, 2015—to notify Salas of a five-day suspension offer for Flores. These are the only allegations with respect to Caldwell, and they in no way indicate his role in the decision to suspend Flores for 30 days. Flores does not allege that Caldwell was aware of her union activities, that he was involved in her investigation or the drafting of the Final Report, or that he had any role in the reconvened pre-disciplinary hearing. In fact, the allegations against Caldwell all take place in July, shortly after the initial pre-disciplinary hearing and more than a month before the reconvened pre-disciplinary hearing and Flores' suspension. There is no indication that Caldwell had an ongoing role in this process. Flores does not plead any facts that establish a causal connection between the actions about which she complains (her 30-day suspension) and Caldwell's two emails. Therefore, the Court dismisses the individual capacity claims against Caldwell.

With respect to Norwood, Flores alleges that Norwood or her agent executed the "Personnel/Position Action Form" attached to the amended complaint as Exhibit B. The mere fact that Norwood, the Director of NFS, signed a disciplinary form is insufficient to support the inference that she was aware that some other unnamed employees of her department were violating Flores' constitutional rights. Norwood is not liable simply because she may have been

6

the supervisor over those who violated Flores' rights. *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir. 1984) (*respondeat superior* is not applicable to § 1983 claims). The sole allegation against Norwood is insufficient to show that she was involved in or knew about the alleged unconstitutional activity. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). There is no indication that Norwood knew about the reconvened pre-termination meeting, participated in the decision to suspend Flores, or otherwise engaged in illegal activity. Therefore, Flores has alleged insufficient facts to state a claim against Norwood in her individual capacity and the Court dismisses those claims.

## II.     Official Capacity Claims

Flores seeks injunctive relief against the Individual Defendants in their official capacities.[3] The Eleventh Amendment bars federal jurisdiction over claims against state officials in their official capacity. *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336–37 (7th Cir. 2000). The immunity is not absolute and does not extend to claims to enjoin a state officer in his or her official capacity from engaging in prospective action that will violate federal law. *Brown*, 398 F.3d at 917 (citing *Ex Parte Young*, 209 U.S. 123, 159–60, 28 S. Ct. 441, 52 L. Ed. 714 (1908)). To determine whether or not a complaint avoids the Eleventh Amendment bar, the Court needs to determine whether the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002).

---

[3] In her response to the Motion to Dismiss, Flores appears to concede that she is only seeking injunctive relief, not monetary damages, against the Individual Defendants in their official capacities. This comports with settled law in this area, which states that monetary damages under § 1983 are only available on individual capacity claims. *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (Eleventh Amendment bars official capacity claims for monetary damages).

7

The first question the Court must answer is whether Flores alleges an ongoing violation of federal law. Flores alleges that she was suspended for thirty days pursuant to a defective process and that the suspension was retaliation for her union activities. Additionally, she alleges that the manner in which Defendants imposed the suspension violated her right to equal protection under the Fourteenth Amendment. Flores has already served this suspension, however, and she is no longer an active union member. Flores also does not allege that the disciplinary proceedings related to the suspension are ongoing or that she is party to any other disciplinary proceedings. Thus, even if the alleged conduct violated her constitutional rights, the amended complaint does not allege that this or any other violation of federal law is ongoing; therefore, the Eleventh Amendment bars the relief she seeks. *See Graham v. Ill. Dep't of Juvenile Justice*, 500 F. App'x 534, 535 (7th Cir. 2013) (claims against state employees in their official capacity barred where plaintiff did not allege an ongoing violation of federal law); *Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002) (claim for prospective relief barred where underlying procedural due process claim "cannot be reasonably construed as 'ongoing'").

The fact that some of the injunctive relief Flores seeks is aimed at preventing Defendants from engaging in violating acts in the future does not save her complaint. The existence of an ongoing violation of federal law is a prerequisite to invoking the exception to the Eleventh Amendment found in *Ex Parte Young*. *Verizon Md.*, 535 U.S. at 645. Therefore, the Court dismisses the claims with respect to the Individual Defendants in their official capacities.

### III. State Agency Defendants

Flores also seeks injunctive relief against HFS and CMS, state agencies. As state agencies, they are, for purposes of the Eleventh Amendment, considered the state. *Kroll v. Bd. of Trustees of Univ. of Illinois*, 934 F.2d 904, 907 (7th Cir. 1991). A state agency with Eleventh

8

Amendment immunity is not a "person" that can be sued under § 1983. *See id.* at 910 n.7; *Omegbu v. Milwaukee Cty.*, 326 F. App'x 940, 942 (7th Cir. 2009) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). Flores contends that this is a misreading of *Will* and cites *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 364, 116 L. Ed. 2d 301 (1991), in support. But *Hafer* does not address the issue of whether a state is a person for purposes of § 1983 at all. It deals with whether the Eleventh Amendment bars claims for monetary damages against state officials in their individual capacities. *Id.* at 30–31. States are not "persons" for purposes of § 1983, therefore, the Court dismisses Flores' claims with respect to CMS and HFS with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [20]. The Court dismisses the claims against the Individual Defendants without prejudice and dismisses the claims against DFS and CMS with prejudice.

Dated: January 4, 2017

SARA L. ELLIS
United States District Judge